1 │ MICHAEL C. ORMSBY
  │ United States Attorney
2 │ Eastern District of Washington
3 │ Aine Ahmed
  │ Assistant United States Attorney
4 │ Scott T. Jones
  │ Assistant United States Attorney
5 │ Post Office Box 1494
6 │ Spokane, WA 99210-1494
7 │ Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**SEP 16 2015**

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

8 │
9 │              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON

10 │ UNITED STATES OF AMERICA,

11 │                     Plaintiff,          14-CR-124-SMJ-2

12 │        vs.                              Plea Agreement
13 │
14 │ TIMOTHY EUGENE SUCKOW,                  Fed. R. Crim. P. 11(c)(1)(C)

15 │                     Defendant.

16 │
17 │        Plaintiff, United States of America, by and through Michael C. Ormsby, United
18 │ States Attorney, for the Eastern District of Washington, and Aine Ahmed and Scott T.
19 │ Jones, Assistant United States Attorneys for the Eastern District of Washington, and
20 │ Defendant TIMOTHY EUGENE SUCKOW and the Defendant's counsel, Mr. Roger
21 │ Peven, agree to the following Plea Agreement:
22 │        1.      Guilty Pleas and Maximum Statutory Penalties:
23 │        Pursuant to Fed.R.Crim.P. 11(c)(1)(C), the Defendant, TIMOTHY EUGENE
24 │ SUCKOW, agrees to plead guilty to every count of the Indictment, CR-14-124-SMJ
25 │ ("Indictment") as charged against him filed on September 16, 2014.
26 │        The Defendant, TIMOTHY EUGENE SUCKOW, agrees to plead guilty to
27 │ Count 2 of the Indictment which charges the Defendant with Murder-for-Hire with a
28 │ murder in fact being committed, in violation of 18 U.S.C. § 1958.

Plea Agreement - 1

The Defendant, TIMOTHY EUGENE SUCKOW, agrees to plead guilty Count 3 of the Indictment, which charges the Defendant with Conspiracy to Commit Murder-for-Hire with a murder in fact being committed, in violation of 18 U.S.C. § 1958.

The Defendant, TIMOTHY EUGENE SUCKOW, understands that Counts 2, and 3 are each Class A felonies, and that the maximum penalty as to **each** count is life imprisonment; a fine not to exceed $250,000; a life term of supervised release; restitution, and a $100 special penalty assessment.

The Defendant, TIMOTHY EUGENE SUCKOW, understands that a violation of a condition of supervised release as to any count carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.    The Court is Not a Party to the Agreement:

The Defendant understands that notwithstanding the 11(c)(1)(C) nature of this Plea Agreement, the Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement.  Sentencing is a matter that is solely within the discretion of the Court.  The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. However, the Defendant also understands that this Plea Agreement is entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon.  The Defendant further understands that the Defendant will have the option to withdraw from this Plea Agreement if the Court imposes a harsher sentence than agreed upon.

Plea Agreement - 2

3.     Waiver of Constitutional Rights:

The Defendant, TIMOTHY EUGENE SUCKOW, understands that by entering these pleas of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).    The right to a jury trial;

(b).    The right to see, hear and question the witnesses;

(c).    The right to remain silent at trial;

(d).    The right to testify at trial; and

(e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.     Elements of the Offenses:

The United States and the Defendant agree that in order to convict the Defendant of Count 2, in violation of 18 U.S.C. § 1958 (Murder for Hire), the United States would have to prove beyond a reasonable doubt the following elements:

(a).    First, beginning on or about October 1, 2013 and continuing until on or about December 15, 2013, in the Eastern District of Washington, and elsewhere, the Defendant used or caused someone else to use an interstate facility, such as a cellular phone, to facilitate or further the commission of a murder.  The commission of a murder need not have been the only reason, or even the principal reason, for use of an interstate facility as long as it was one of the reasons for the travel or use of a facility;

(b).    Second, the use of an interstate facility was done with the intent that a murder be committed in violation of the laws of any State or the United States;

(c).    Third, the murder in question was intended to be committed as consideration for the receipt of anything of value. This requires that there was a mutual agreement, understanding or promise that something of value would be exchanged for committing the murder.  "Anything of value" means money, negotiable instruments, or anything else the primary significance of which is economic advantage; and

(d).    But for the Defendant's actions, the victim Douglas Carlile would not have died.

The United States and the Defendant agree that in order to convict the Defendant of Count 3 of the Indictment (Conspiracy to Commit Murder, with a murder in fact being committed), in violation of 18 U.S.C. § 1958, the United States would have to prove beyond a reasonable doubt the following elements:

(a).    First, beginning on or about October 1, 2013, and continuing until on or about December 15, 2013, in the Eastern District of Washington, and elsewhere, the Defendant did knowingly agree, combine, and confederate with at least one other person to commit a murder for hire, in violation of 18 U.S.C. § 1958;

(b.)    Second, the Defendant knowingly became a member of this conspiracy knowing of its object, which was to commit a murder for hire, in violation of 18 U.S.C. § 1958;

(c).    at least one member of the agreement did complete an overt step in furtherance of the agreement knowing of its objective, that was, to commit a murder for hire, in violation of 18 U.S.C. § 1958; and

(d).    a murder occurred as a result of the conspiracy.

5.    Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for TIMOTHY EUGENE SUCKOW's guilty pleas. **The Defendant may not have personal knowledge of all**

Plea Agreement - 4

**the facts below, but he is stipulating that based on his review of discovery and discussions with his lawyer, that the United States could prove the following facts beyond a reasonable doubt at trial.** The Defendant further understands that all of the facts surrounding his conduct and the conduct of the others have not been set forth in this Plea Agreement, but only those facts sufficient to support his pleas of guilty have been included. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Douglas Jay Carlile ("Carlile") was murdered on December 15, 2013, by the Defendant, TIMOTHY SUCKOW, in Spokane, Washington. James HENRIKSON ("HENRIKSON") ordered Robert Delao ("Delao") to contact SUCKOW to commit the murder. Delao used a cellular telephone to contact Suckow. SUCKOW was to be paid $20,000 for the Carlile murder, but was arrested the day before he was to receive payment.

Carlile was shot and killed in his home located at 2505 S. Garfield Road, Spokane, Washington, which is within the Eastern District of Washington. The intruder, who was later identified as TIMOTHY SUCKOW, fired seven rounds at Carlile, striking him six times causing twelve separate gunshot wounds (including exit wounds). This included a gunshot wound to the mouth area (right below right nostril), two wounds to the chest area, one wound to the left shoulder area, one wound to the left rib area, and one wound to the right forearm.

Immediately prior to the time of the Carlile murder, both Douglas and his wife, Elberta, had just returned home around 7:00 p.m. TIMOTHY SUCKOW was positioned at the side of the Carlile house awaiting his return. After parking the vehicle in the driveway, Elberta Carlile entered the residence through a back-door. Doug Carlile went back to close the drive-way gate. He then proceeded into the house via the same rear-entrance his wife had earlier entered. As he was attempting to close

Plea Agreement - 5

the door, TIMOTHY SUCKOW came up behind Carlile. Douglas Carlile noticed that the door did not close behind him, and turned around and saw SUCKOW. SUCKOW kicked the door open. SUCKOW then pulled a pistol and pointed it at Carlile.

According to Elberta, she was already upstairs when she heard a conversation downstairs, and assumed one of her sons had come to the house. She heard her husband say, "You don't have to do this." According to SUCKOW, Carlile softly said, "Get the gun." SUCKOW then saw Elberta Carlile after she came down the stairwell, and she appeared to be holding something in her hand. Elberta would testify that she saw a white male, wearing all black with his head covered (SUCKOW was wearing a baklava and was wearing a black ballistics vest). According to Elberta, her husband yelled at her to go back upstairs, and as she ran upstairs, she heard multiple gun shots. She hid in the bedroom closet and called 911.

After SUCKOW shot Carlile multiple times at close range, he ran out of the same entrance he had come in and proceeded to the back yard, thru the neighbor's yard, and ran thru the backstreets of the neighborhood and past a local elementary school. SUCKOW said that after the murder, he contacted Delao and stated, "Tell the Boss to watch the news."

Prior to the murder of Carlile, in late August or early September, 2013, Delao met with SUCKOW at the Riverfront Park (Spokane, WA) near the Ferris wheel. Delao mentioned "taking care of someone local." Delao stated that if SUCKOW killed this person he could take this person's place ("seat on the board") on an oil drilling venture which had several partners. Of note, SUCKOW had previously killed Kristopher Clarke in 2012 at the request of HENRIKSON, and had been paid $20,000 by HENRIKSON to commit this murder. Delao said that SUCKOW could make a quarter of a million dollars a year which would be paid in quarterly payments. SUCKOW informed Delao that he was not interested in conducting a second killing, and asked Delao if could simply beat him up. SUCKOW believed it was too risky and ridiculous for someone like him who knew nothing about oil drilling to just show-up

Plea Agreement - 6

and take someone's seat on the board. Delao said that he would check with the "Boss" (HENRIKSON) about just committing an assault. Delao said he would give SUCKOW the information on Carlile and he would send it via a bogus email account. SUCKOW asked how much he would get paid for committing an assault rather than a murder. Delao responded that he would have to check with the Boss, but that it would probably be a couple of thousand dollars for just beating him up, and more money for a murder.

Approximately three weeks after meeting with Delao in Spokane, SUCKOW received an email from Delao with a photograph of Carlile as well as Carlile's address (this email with photo and address was recovered by law enforcement). Delao would testify he acquired this photo from HENRIKSON. Delao also texted SUCKOW to treat Carlile as a Piñata, which SUCKOW took to mean that he was just to give Carlile a beating. However, according to SUCKOW, Delao informed him that HENRIKSON wanted Carlile murdered and not just beat up. SUCKOW informed Delao and said that he did not think that was such a good idea. Delao responded via text, and stated that he had spoken to the Boss, and that a "piñata party" would be sufficient. However, by October, 2013, Delao again contacted SUCKOW and stated that the Boss wanted Carlile murdered. SUCKOW agreed to murder Carlile. SUCKOW stated he was willing to do a murder rather than just a beating because he needed the money, and the $2000 he was going to be paid for beating Carlile up would not be sufficient. The Defendant admits he used a cellular phone and email to coordinate the murder, and that he was promised a $20,000 to commit the murder, and that the money was supposed to come from James HENRIKSON like it had on the previous occasion, when the Defendant had killed Kristopher Clarke in North Dakota.

6.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will

Plea Agreement - 7

1  determine the Defendant's applicable sentencing guideline range at the time of

2  sentencing.

3        a)      Offense Level:

4        The United States and the Defendant do not agree nor does either party make

5  any representation as to the offense level.  But for the Fed.R.Crim.P 11(c)(1)(C)

6  nature of this Plea Agreement, the United States submits that the Defendant would be

7  facing multiple sentences of life imprisonment.   The United States does agree to

8  reduce the Defendant's final offense level, as will be calculated in the U.S.

9  Probation's Presentence Investigation Report, by three (3) offense levels pursuant to

10  U.S.S.G. § 3E1.1(a) and (b) if the Defendant pleads guilty and demonstrates a

11  recognition and an affirmative acceptance of personal responsibility for the criminal

12  conduct; provides complete and accurate information during the sentencing process;

13  does not commit any obstructive conduct; accepts this Plea Agreement; and enters

14  pleas of guilty no later than September 16, 2015.  The Defendant and the United

15  States agree that the United States may at its option and upon written notice to the

16  Defendant, not recommend a three (3) level downward reduction for acceptance of

17  responsibility and timely plea if, prior to the imposition of sentence, the Defendant is

18  charged or convicted of any criminal offense whatsoever or if the Defendant tests

19  positive for any controlled substance.

20        Furthermore, the Defendant agrees to pay the $200.00 mandatory special

21  penalty assessment to the Clerk of Court for the Eastern District of Washington, at or

22  before sentencing, and shall provide a receipt from the Clerk to the United States

23  before sentencing as proof of this payment, as a condition to this recommendation by

24  the United States.

25        b)      Criminal History:

26        The United States and the Defendant understand that the Defendant's criminal

27  history computation is tentative and that ultimately the Defendant's criminal history

28  category will be determined by the Court after review of the Presentence Investigative

Plea Agreement - 8

Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

7.    Incarceration:

a)    Length of Imprisonment:

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and Defendant agree to recommend that the Court impose a sentence of incarceration of thirty (30) years imprisonment followed by a term of life supervised release. The Defendant understands that there is condition precedent to this recommendation. The Defendant understands that he must truthfully and completely testify at any federal or state proceeding that the Government (meaning the United States, the State of Washington or State of North Dakota) requests that he testify at, and that he also understands that he will not be sentenced until his cooperation is deemed complete by the United States. The Defendant understands that he must participate in debriefings requested by law enforcement, and that he must provide complete and truthful answers during these debriefings. If the Defendant fails any of these conditions, then he understands that the 11(c)(1)(C) nature of this Plea Agreement will not be followed by the United States, and that the United States will consider this Plea Agreement to be null and void. The Defendant understands that he does not have the right to contest the United States' assessment of his cooperation, and that the United States alone will determine if he has provided complete and truthful testimony.

The Defendant understands that he may withdraw from the Plea Agreement if the Court sentences him to more than thirty (30) years imprisonment and that the United States may withdraw from the Plea Agreement if the Court sentences the Defendant to less than thirty (30) years imprisonment. If the Court sentences the Defendant to no more than thirty (30) years incarceration followed by a term of life supervised release, the Defendant understands he cannot withdraw from this Plea Agreement.

Plea Agreement - 9

8.   Criminal Fine:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

9.   Supervised Release:

Pursuant to Fed.R.Crim.P 11(c)(1)(C), the United States and the Defendant agree to recommend that the Court impose a life term of supervised release.

10.   Forfeiture:

The Defendant, TIMOTHY EUGENE SUCKOW, agrees to voluntarily forfeit any and all right, title and interest he has or may have in the following in favor of the Spokane Police Department, and if requested, hereby agrees to execute any and all forms or pleadings necessary to effectuate the forfeiture of the below-listed firearms to the Spokane Police Department. The Defendant waives further notice of forfeiture and disposal of the firearms and consents to their destruction.

FIREARMS

1.   Springfield Semi-Automatic Handgun, Model 1911 A1, SN 6127;

2.   Mossberg Pistol-Grip Shotgun, Model 500A, SN L248448;

3.   Remington Pistol-Grip Shotgun and Green Gun Case, Model 870, SN [Covered];

4.   IZMASH Semi-Auto Rifle and Case, Model SAIGA, SN 02003900 ?[Obscured];

5.   Marlin Lever-Action Rifle, Model 1895g, SN MR07785B;

6.   Semi-Auto Rifle and Case, Model SKS, SN 23002032;

7.   Ruger Semi-Auto Rifle and Case, Model 10/22, SN 246-84604;

8.   Remington Semi-Auto Rifle and Case, Model 522, SN 3174713;

9.   Ruger Rifle and Case, Model Ranch, SN 188-99918;

Plea Agreement - 10

10.    Winchester Rifle and Case, Model 94, SN 4690748;

11.    Ruger Pistol and Case, Model P94, SN 340-85126;

12.    HI Point Pistol and Holster, Model C9, SN P1550014;

13.    Raven Arms Semi-Auto Pistol with Magazine and Cartridges, Model P25, SN 356967;

14.    Mauser Bolt-Action Rifle, Model 98, SN 9103;

15.    Mauser Bolt-Action Rifle, Model 98, SN 6621;

16.    Mauser Bolt-Action Rifle, Model 98, SN A8713; and,

17.    Ruger Semi-Auto Rifle, Model 10/22, SN 350-42160.

11.    Restitution:

The United States and the Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution.  The Defendant and United States agree to submit their respective calculations as to restitution to the Court at least thirty (30) days prior to sentencing.

12.    Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $200.00 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13.    Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14.   Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15.   Appeal Rights:

Defendant understands that waives his to appeal or challenge the convictions and sentence imposed by the Court so long as the Court accepts the Plea Agreement and the Defendant receives a sentence of no more than thirty (30) years imprisonment and term of life supervised release, as well as a criminal fine of no more than $300.00 and restitution, the Defendant expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any motion for reduction of sentence or other attack of the conviction or sentence, including but not limited to proceedings pursuant to 28 U.S.C. § 2255 (Writ of Habeas Corpus).  Should this conviction be set aside, reversed, or vacated, this Plea Agreement is null and void and the United States may institute or re-institute any charges against the Defendant and make derivative use of any statements or information the Defendant has provided.

16.   Integration Clause:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case.  This Plea Agreement is binding

Plea Agreement - 12

only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORSMBY
United States Attorney

_____          _____
Aine Ahmed                                                        9/16/15
Assistant U.S. Attorney                                Date

_____          _____
Scott T. Jones                                                   9/16/15
Assistant U.S. Attorney                                Date

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          _____
TIMOTHY EUGENE SUCKOW                         9-16-15
Defendant                                                      Date

Plea Agreement - 13

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____     9.16·15
Mr. Roger Peven                          Date
Attorney for the Defendant

Plea Agreement - 14